UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
───────────────────────────────────────

JACQUELINE BILLER,

                   Plaintiff,

                                      3:14-CV-0043(GTS/DEP)

v.

EXCELLUS HEALTH PLAN, INC., d/b/a
Excellus Bluecross Blueshield; and BLUE
CROSS AND BLUE SHIELD PLAN, d/b/a
BlueCross BlueShield of Central New York,

                   Defendants.
───────────────────────────────────────

APPEARANCES:                                          OF COUNSEL:

McKAIN LAW, PLLC                                      CARLA N. McKAIN, ESQ.
  Counsel for Plaintiff
136 E. State Street
Ithaca, NY 14850

BOND SCHOENECK & KING, PLLC                           ROBERT KIRCHNER, ESQ.
  Counsel for Defendants                              JAMES P. WRIGHT, JR., ESQ.
One Lincoln Center
Syracuse, NY 13202

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this action for health care benefits filed by Jacqueline

Biller ("Plaintiff") against Excellus Health Plan, Inc., and Blue Cross and Blue Shield Plan

pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§

1001 *et seq*., are Plaintiff's motion for partial summary judgment and Defendants' cross-motion

for summary judgment.  (Dkt. Nos. 18, 21.)  For the reasons set forth below, Plaintiff's motion is

denied, and Defendants' cross-motion is granted.

## I.     RELEVANT BACKGROUND

### A.     Plaintiff's Amended Complaint

Generally, in her Amended Complaint, Plaintiff alleges that Defendants wrongfully denied her health insurance claim for $16,419.15 for an air ambulance to transport her from Robert Packer Hospital in Sayre, Pennsylvania, to the Cleveland Clinic in Ohio on October 2, 2011.  (Dkt. No. 6.)  Based on these factual allegations, Plaintiff asserts three claims against Defendants: (1) a claim under ERISA § 502(a)(1)(B) to recover the full benefits due; (2) a claim under ERISA § 502(a)(3) to remedy a breach of fiduciary duty; and (3) a claim under ERISA § 502(a)(3) to remedy a breach-of-claims procedure.  (*Id*.)

### B.     Statement of Undisputed Material Facts on Plaintiff's Motion

Unless followed by record citations, the following facts have been asserted and supported by an accurate record citation in Plaintiff's Statement of Material Facts ("Rule 7.1 Statement") and either admitted or not expressly denied with an accurate supporting record citation in Defendants' response thereto ("Rule 7.1 Response").  (*Compare* Dkt. No. 18, Attach. 2 [Plf.'s Rule 7.1 Statement] *with* Dkt. No. 21, Attach. 1 [Defs.' Rule 7.1 Response].) The Court notes that, while Plaintiff cites her "Complaint" as additional support for parts of various of her factual assertions, that Complaint is inoperative because an Amended Complaint has been filed. N.D.N.Y. L.R. 7.1(a)(4).  As a result, the Court will liberally construe these cites to refer to Plaintiff's Amended Complaint.  However, the Amended Complaint is unverified; and a plaintiff may not use her unverified pleading to support a factual assertion in her motion for summary judgment.[1]

_____

[1]     *See Rodriguez v. Bubnis*, 11-CV-1436, 2014 WL 6078529, at *10 (N.D.N.Y. Nov. 13, 2014) ("However, two fatal problems exist with regard to th[e] factual allegations [in Plaintiff's Amended Complaint]. First, the pleading is not verified. . . .  As a result, it does not have the force and effect of an affidavit [for purposes of a motion for summary judgment].") (Suddaby, J.); *Torres v. Viscomi*, 03-CV-0796, 2006 WL 2728628, at *3 (D. Conn. Sept. 25,

1.    Plaintiff was and is an employee of the Plan Sponsor ("Employer").

2.    In 1998, Employer established a health plan ("the Plan").

3.    Employer funded the Plan with a group insurance contract issued by Excellus.
(Dkt. No. 18, Attach. 3, ¶¶ 3, 8 [Hansen Decl.].)

4.    In purchasing the insurance, Employer used New York Group Administrators Employee Benefit Trust, Inc. ("NYGA") as a broker.

5.    NYGA negotiates benefits and rates for the Plan, collects and remits premium payments to the insurer, and advises Employer on the insurance carrier's guidelines, changes to benefits, or rate adjustments.

6.    Because Excellus requires that a business be annually approved to be an employer under Excellus's group coverage, NYGA provides forms to Employer and Employer provides relevant tax information to NYGA.  (Dkt. No. 18, Attach. 3, ¶ 6 [Hansen Decl.]; Dkt. No. 18, Attach. 4, at 4-5, ¶ 4 [Request for Participation].)

7.    Since approximately December 7, 1998, Excellus has been the insurer for the Plan.  (Dkt. No. 18, Attach. 3, ¶ 8 [Hansen Decl.]; Dkt. No. 18, Attach. 4 [NYGA Employee Benefit Trust Employer Information and Adoption Agreement].)

8.    When deciding among insured plans offered by Excellus, Employer typically chooses a higher level of coverage for its employees, and pays a higher premium for that coverage.  (Dkt. No. 18, Attach. 3, ¶ 9 [Hansen Decl.].)

---

2006) ("The plaintiff has filed no affidavit in response to the motion for summary judgment and his amended complaint is not verified. Thus, the plaintiff has not provided any evidence [with regard to his First Amendment claim] . . . ."); *Chisari v. Leeds, Morelli & Brown, P.C.*, 02-CV-8836, 2004 WL 1588161, at *1, n.2 (S.D.N.Y. July 16, 2004) ("As Chisari's initial and amended complaints are not verified, they may not serve as affidavits for summary judgment purposes.").

9. Employer had three full-time employees in October 2011, and still has three full-time employees, each of whom is covered by the Plan described above.

10. One of Employer's employees in October 2011 was Plaintiff, and Plaintiff has been a participant in the Plan continuously since 1998.[2]

11. To cover Employer's three employees in 2011, Employer sent $2,850 each quarter in premium payments to NYGA, amounting to $11,400 per year in premium payments; then, after deducting its administrative fee, NYGA forwarded the amounts to Excellus as payments for coverage under the insurance contract. (Dkt. No. 18, Attach. 3, ¶¶ 6, 14 [Hansen Decl.].)

12. Employer has always paid 100 percent of the cost of health care coverage for its employees.

13. Employer has always timely submitted premium payments for the Plan.

14. Employer has never been involved in handling or deciding any claims made by its employees through their insurance coverage with Excellus.

15. Excellus has all the discretion to decide eligibility and coverage questions under the group contract it issued, and was and is the decision maker on claims made under that group contract, except that Excellus is bound by the determination of the External Appeal Agent under New York Insurance Law. (Dkt. No. 18, Attach. 3, ¶¶ 2, 3, 17 [Hansen Decl.]; Dkt. No. 21, Attach. 4, ¶¶ 2, 5, 7, 10 [Cassady Decl.]; Dkt. No. 21, Attach. 8, at 3-62 [Exs. A-D to Houghtaling Decl.].)

_____

[2] While Defendants admit Plaintiff's factual assertion that "[t]he group number for the insurance policy in 2011 was 12902-01" (Dkt. No. 21, Attach. 1, ¶ 12), the record citation provided by Plaintiff ("Exhibit B") does not support that factual assertion.

16.     A portion of the premiums Employer pays to Excellus covers the cost of Excellus handling claims processing, benefits decisions and benefits appeals as (to the understanding, and in the experience, of Employer) the claims administrator.  (Dkt. No. 18, Attach. 3, ¶ 18 [Hansen Decl.].)

17.     Excellus's employees process all health, medical and surgical claims.

18.     It was Employer's intent in establishing the Plan, and it is Employer's practice as the Plan Administrator, that all claims administration, claims decisions and other administrative decisions related to the policy would be and are made by Excellus as the claims administrator.

19.     As the Plan Sponsor and the Plan Administrator under ERISA, Employer has the power to decide whether to have a plan, what level of coverage to offer its employees, and how much of the cost will be paid by them, if any; but Employer has always delegated all claims processing and decision making authority to Excellus through the insurance contract (to the extent that Excellus is not bound by the determination of the External Appeal Agent under New York Insurance Law).  (Dkt. No. 18, Attach. 3, ¶¶ 2, 3, 8, 9, 21-22 [Hansen Decl.]; Dkt. No. 21, Attach. 4, ¶¶ 2, 5, 7, 10 [Cassady Decl.]; Dkt. No. 21, Attach. 8, at 3-62 [Exs. A-D to Houghtaling Decl.].)

20.     After Employer is accepted in the group contract each year, Excellus provides enrollment materials directly to the participants, and otherwise communicates directly with the participants.

21.     Employer is bound by the terms and conditions of the group insurance policy under which a certificate of insurance is issued.

22.     Under the Request for Participation signed by Employer and NYGA, the insurance companies may revise the coverage provided.

23.     Under the Request for Participation signed by Employer and NYGA, the Employer agrees that "any changes [by the insurance company] may affect the coverage and benefits provided under the Employer's Plan."

24.     On or about October 14, 2011, Excellus received a claim for air transportation services rendered to Plaintiff; on or about November 22, 2011, Excellus issued a letter denying the claim because, *inter alia*, a "Medical Director" had determined that the services were not medically necessary; and on or about February 10, 2012, Excellus issued a letter denying Plaintiff's internal appeal from the denial, because, *inter alia*, a second "Medical Director" had determined that the services were not medically necessary.  (Dkt. No. 11, ¶¶ 37-39, 47 [Defs.' Answer to Plf.'s Am. Compl.]; Dkt. No. 21, Attach. 3, at 23-24 [Ltr. of Nov. 22, 2011]; Dkt. No. 21, Attach. 3, at 28-29 [Ltr. of Feb. 10, 2012].)[3]

25.     On or about August 2, 2013, Excellus issued a letter rejecting a third attempt at appealing the denied claim because, *inter alia*, "an external appeal agent selected by the New York State Department of Financial Services[] had reviewed the case and determined that the air ambulance transportation provided to [Plaintiff] was not medically necessary."  (Dkt. No. 11, ¶¶ 64-65 [Defs.' Answer to Plf.'s Am. Compl., referencing Exhibit 7 to Plf.'s Am. Compl.]; Dkt. No. 6, Attach. 7 [Ltr. of Aug. 2, 2013]; Dkt. No. 21, Attach. 8, at 58 [NYS Appeal Determination dated Apr. 2, 2012].)

---

[3]     While Plaintiff's unverified Amended Complaint does not constitute evidence in support of her motion for summary judgment, admissions contained in Defendants' Answer to Plaintiff's Amended Complaint may establish a fact for purposes of that motion.  *See* Fed. R. Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied."); Fed. R. Civ. P. 56(c)(1)(A) (stating that a factual assertion may be supported by, *inter alia*, "admissions"), *accord*, N.D.N.Y. L.R. 7.1(a)(3); *Dawkins v. Williams*, 511 F. Supp.2d 248, 270 (N.D.N.Y. 2007) (Report-Recommendation of Lowe, M.J., adopted by Kahn, J.) ("[A] defendant's failure in its answer to properly deny a factual allegation contained in the plaintiff's complaint may constitute an admission under Rule 8(d) of the Federal Rules of Civil Procedure, sufficient to preclude the defendant from disputing the asserted fact during a subsequent summary judgment motion.").

26. The Prehospital Emergency Services and Ambulance Transportation Benefit Rider that is part of the group insurance contract states it is issued by "Excellus Health Plan, Inc." (Dkt. No. 11, ¶ 8 [Defs.' Answer to Plf.'s Am. Compl., admitting that "[r]elevant pages of the policy . . . are attached . . . as Exhibit 1"]; Dkt. No. 11, Attach. 1, at 7 [including the Rider in Exhibit 1].)

27. The group insurance contract states that, "[w]hen used in this contract, Blue Cross and Blue Shield Plan means any of the individual Plans, including Blue Cross Blue Shield of Central New York, when conducting business under one or more service marks licensed by the Blue Cross and Blue Shield Association."

28. The group insurance contract states that "[a] member institutional provider is a provider that has an agreement with us or another Blue Cross and Blue Shield Plan to provide covered institutional services."

29. The group insurance contract states that "[t]his contract is an agreement between Excellus Health Plan, Inc., doing business as Blue Cross and Blue Shield of Central New York and you. In this contract 'we,' 'us,' and 'our' mean Blue Cross and Blue Shield of Central New York."

30. The group insurance contract states that, "[w]hen used in this contract, 'basic contract' means the institutional and medical-surgical contracts issued by Excellus Health Plan, Inc., doing business as BlueCross BlueShield of Central New York."

31. The group insurance contract states that Excellus "may . . . obtain from[] any person, company, or organization information that [it] believe[s] necessary to process [Plaintiff's] claim," including "medical records." (Dkt. No. 18, Attach. 5, at 6, ¶ 16 [Excellus BCBS Policy].)

32.     The group insurance contract states as follows:

> **Retrospective Reviews**
> At our option, a nurse will review retrospectively the medical necessity of
> claims that are subject to utilization review. If the nurse determines that
> care you received was medically necessary, the nurse will authorize the
> benefits. If the nurse determines that medical necessity was lacking, the
> nurse will refer the case to a licensed physician.
> If we have all the information necessary to make a determination
> regarding a retrospective claim, we will make a determination and provide
> notice to you and your provider within 30 calendar days of receipt of the
> claim. If we need additional information, we will request it within 30
> calendar days. . . .

33.     The group insurance contract states as follows:

> **Interpretation of this contract.** We have the authority and discretion to
> interpret this contract and to construe any uncertain or disputed term or
> provision, including, but not limited to[,] determining whether an
> individual is eligible for benefits and, if so, the amount of the benefit
> available.

34.     Again, Excellus has all the discretion to decide eligibility and coverage questions

under the group contract it issued, except that Excellus is bound by the determination of the

External Appeal Agent under New York Insurance Law. (Dkt. No. 18, Attach. 3, ¶¶ 2, 3, 8, 9,

17, 22 [Hansen Decl.]; Dkt. No. 21, Attach. 4, ¶¶ 2, 5, 7, 10 [Cassady Decl.]; Dkt. No. 21,

Attach. 8, at 3-62 [Exs. A-D to Houghtaling Decl.].)

## C.     Statement of Undisputed Material Facts on Defendants' Cross- Motion

Unless followed by record citations, the following facts have been asserted and supported

by an accurate record citation in Defendants' Rule 7.1 Statement and either admitted or not

expressly denied with an accurate supporting record citation in Plaintiff's Rule 7.1 Response.

(*Compare* Dkt. No. 21, Attach. 2 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 25, Attach. 7 [Plf.'s

Rule 7.1 Response].)  The Court notes that, as it has done on Plaintiff's motion, it has liberally

construed Defendants' cites to Plaintiff's "Complaint" (in support of various of their factual assertions) as referring to Plaintiff's *Amended* Complaint. The Court notes further that, while the Amended Complaint is unverified (and thus does not constitute evidence), just as Plaintiff may rely on admissions contained in her opponents' Answer to support her motion, Defendants may rely on admissions contained in their opponent's Amended Complaint (and/or documents attached to that Amended Complaint and thus part of it under Fed. R. Civ. P. 10[c]) to support their cross-motion.[4]

1.     In 1998, Patricia Hansen ("Hansen") created an unnamed employee welfare benefit plan that provides health benefits coverage to The Hand of Man's full-time employees (the "Hand of Man Plan").

2.     Hansen is the Plan Sponsor and the Plan Administrator of the Hand of Man Plan and has the authority to decide whether to have a Plan, how to fund it, what level of coverage to offer her employees, and how much will be paid by them, if any. (Dkt. No. 18, Attach. 3, ¶¶ 2, 3, 8, 9, 13, 21, 22 [Hansen Decl.].)

3.     Plaintiff began running a fever on September 28, 2011.[5]

---

[4]     *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) (rejecting plaintiff's attempt to avoid summary judgment by relying on affidavits that contradicted an express allegation in its complaint, because "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding"); *Schott Motorcycle Supply. Inc. v. Am. Honda Motor Co., Inc.*, 976 F.2d 58, 61 (1st Cir. 1992) (relying on an admission in plaintiff's complaint in affirming the grant of summary judgment for defendant, explaining that "plaintiff should not be allowed to contradict its express factual assertion in an attempt to avoid summary judgment"); *Missouri Housing Dev. Comm'n v. Brice*, 919 F.2d 1306, 1315 (8th Cir.1990) ("admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions").

[5]     The Court notes that Plaintiff's response this factual assertion, as does her responses to numerous following factual assertions, improperly contains argument. (Dkt. No.

4.      On September 30, 2011 and October 1, 2011, Plaintiff had one or more blood tests at Robert Packer Hospital ("Robert Packer").

5.      On October 1, 2011, Plaintiff was admitted to Robert Packer and placed on an IV drip containing a narrow spectrum of antibiotics (specifically, ertapenem and vancomycin) based on a diagnosis of, *inter alia*, systemic inflammatory response syndrome ("SIRS"). (Dkt. No. 25, Attach. 2, at 3, ¶¶ 8-10 [Second Decl. of Prabhu]; Dkt. No. 6, Attach. 3, at 2, ¶ 5 [Ex. 3 to Plf.'s Am. Compl.]; Dkt. No. 6, Attach. 4, at 16 [Exs. 4-7, 4-8, 4-10 and 4-14 to Plf.'s Am. Compl.].)

6.      On October 2, 2011, Robert Packer decided (upon consulting with the nephrologist on duty and the infectious disease unit) to transfer Plaintiff to a hospital that had a kidney transplant center.  (Dkt. No. 25, Attach. 2, at 3, ¶¶ 6-7 [Second Decl. of Prabhu]; Dkt. No. 6, Attach. 3, at 2, ¶¶ 13-14 [Ex. 3 to Plf.'s Am. Compl.]; Dkt. No. 6, Attach. 16 [Ex. 4-15 to Plf.'s Am. Compl.].)

7.      University Hospital in Syracuse, New York, and the University of Rochester Medical Center both have kidney transplant facilities that were closer by road to Robert Packer than was the Cleveland Clinic. (Dkt. No. 21, Attach. 3, at 57-62 [Exs. 4-6 to Wright Decl.]; Dkt. No. 21, Attach. 7, at 1-2, ¶ 3 [Dubeck Decl.]; Dkt. No. 21, Attach. 7, at 19-23 [Ex. C to Dubeck Decl.].)

---

25, Attach. 7, ¶ 3 [Plf.'s Rule 7.1 Response].)  For example, it attempts to deny facts *not* contained in the factual assertion. *See Yetman v. Capital Dist. Transp. Auth.*, 12-CV-1670, 2015 WL 4508362, at *10 (N.D.N.Y. July 23, 2015) (Suddaby, J.) ("Of course, arguing over the possible implications stemming from an otherwise undisputed fact does not render that fact in dispute. . . .  This is because the summary judgment procedure is based on the *assertion* of facts and their disputation, not the *implication* of facts and their disputation.") (internal quotation marks and citations omitted; emphasis in original).  Moreover, it attempts to assert facts that belong (if anywhere) in a Statement of Additional Material Facts that the Non-Movant Contends Are in Dispute.  N.D.N.Y. L.R. 7.1(a)(3).

8. On October 2, 2011, before 12:36 p.m., the following decision was made regarding Plaintiff's transportation to the Cleveland Clinic: "Due to bad weather it is not possible to transfer [Plaintiff] by air ambulance and she will be transferred via the ground ambulance at around 2:00 p.m. today." (Dkt. No. 6, Attach. 4, at 16 [Ex. 4-15 to Plf.'s Am. Compl.].)

9. It takes approximately five hours to drive from Robert Packer to the Cleveland Clinic.

10. Subsequently, the method of transport was changed to an air ambulance operated by Mercy Flight.

11. Mercy Flight picked up Plaintiff and her belongings at 3:25 p.m. (Dkt. No. 6, Attach. 5, at 5 [Ex. 5-4 to Plf.'s Am. Compl.].)

12. According to Mercy Flight records, Plaintiff's "Chief Complaint" on October 2, 2011, was "Fever/not feeling well three days ago." (Dkt. No. 6, Attach. 5, at 5 [Ex. 5-4 to Plf.'s Am. Compl.].)

13. According to Mercy Flight records, after having her stretcher unloaded from the land ambulance that had driven her to the airport, and having that stretcher brought next to the aircraft, Plaintiff "stood and stepped in[to]" the aircraft. (Dkt. No. 6, Attach. 5, at 8 [Ex. 5-6 to Plf.'s Am. Compl.].)

14. According to Mercy Flight records, during her flight to the Cleveland Clinic, Plaintiff was "alert," "fully aware of everything that's going on," "[in] no distress whatsoever" and "enjoying the view." (Dkt. No. 6, Attach. 5, at 8-9 [Exs. 5-7 and 5-8 to Plf.'s Am. Compl.].)

15.     According to Mercy Flight records, while flying Plaintiff to the Cleveland Clinic, Mercy Flight monitored her vital signs, which remained stable, and applied a "[n]asal cannula" to deliver oxygen to her; it rendered no other services.  (Dkt. No. 6, Attach. 5, at 8-9 [Exs. 5-7 and 5-8 to Plf.'s Am. Compl.].)

16.     According to Mercy Flight records, upon arriving in Cleveland, Plaintiff "ambulated from [the] aircraft to [a land] ambulance," was driven to the Cleveland Clinic, and arrived at the Cleveland Clinic at 5:10 p.m., at which time she "ambulated independently to [her] hospital bed."  (Dkt. No. 6, Attach. 5, at 9 [Ex. 5-8 to Plf.'s Am. Compl.].)

17.     According to Cleveland Clinic records, while at the Cleveland Clinic on October 2, 2011, Plaintiff was evaluated by a physician at 8:16 p.m. (Dkt. No. 6, Attach. 4, at 28 [Ex. 4-27 to Plf.'s Am. Compl.].)

18.     According to Cleveland Clinic records, Plaintiff's "CHIEF COMPLAINT" was "Fever," although her temperature was 98.4 degrees at the time of evaluation.  (Dkt. No. 6, Attach. 4, at 28, 30 [Exs. 4-27 and 4-29 to Plf.'s Am. Compl.] [emphasis removed].)

19.     The physician who evaluated Plaintiff at 8:16 p.m. at the Cleveland Clinic was an internal medicine resident with no specialization in nephrology.  (Dkt. No. 6, Attach. 4, at 28-31 [Exs. 4-27 through 4-30 to Plf.'s Am. Compl.]; Dkt. No. 21, Attach. 3, at 54-55.)

20.     According to Cleveland Clinic records, the Cleveland Clinic, *inter alia*, diagnosed Plaintiff with line-associated bacteremia from her Hickman catheter, continued her IV antibiotics, removed and replaced her catheter, and discharged her on October 7, 2011. (Dkt. No. 6, Attach. 4, at 42-43 [Exs. 4-41 and 4-42 to Plf.'s Am. Compl.].)

21.     Although the Cleveland Clinic has renal transplant facilities and expertise in the care of renal transplant patients (facilities and expertise not available at Robert Packer), each of the medical services actually provided to Plaintiff at the Cleveland Clinic was available to her at Robert Packer.  (Dkt. No. 25, Attach. 2, at ¶¶ 14-17 [Second Decl. of Prabhu; Dkt. No. 6, Attach. 4, at 25, 28-31, 42-45 [Exs. 4-24, 4-27 through 4-30, and 4-41 through 4-44 to Plf.'s Am. Compl.].)

22.     According to Cleveland Clinic records, Plaintiff was "asymptomatic throughout [her] hospitalization" at the Cleveland Clinic. (Dkt. No. 6, Attach. 4, at 25 [Ex. 4-24 to Plf.'s Am. Compl.].)

23.     Mercy Flight submitted a claim to Excellus for $16,419.15 after it had rendered its services to Plaintiff.

24.     On the "CERTIFICATE OF MEDICAL NECESSITY FOR AIR AMBULANCE TRANSPORTION" submitted by Mercy Flight to Excellus, Dr. Ayush Gandhi did not check the line indicating that Plaintiff's "medical condition required immediate and rapid ambulance transportation that could not have been provided by a land ambulance," or the line indicating that "[t]he point of pickup [was] inaccessible by land vehicle."  (Dkt. No. 6, Attach. 5, at 13 [Ex. 5-12 to Plf.'s Am. Compl.].)

25.     Rather, Dr. Gandhi checked the line indicating that "[g]reat distances or other obstacles (e.g. heavy traffic) are involved in getting the patient to the nearest hospital with appropriate facilities," and the line marked "Other" followed by the explanation "Transplant facility."  (Dkt. No. 6, Attach. 5, at 13 [Ex. 5-12 to Plf.'s Am. Compl.].)

26.     Moreover, Dr. Gandhi did not check any of the lines listing "[m]edical conditions of the patient at the time of pickup that necessitated utilization of air transport," but instead checked the line marked "Other" followed by the explanation "transplant facility familiar with patient." (Dkt. No. 6, Attach. 5, at 13 [Ex. 5-12 to Plf.'s Am. Compl.].)

27.     Finally, Dr. Gandhi wrote "transplant facility familiar with patient" after the statement "EXPLANATION REQUIRED WHY PATIENT NEEDED TO BE TRANSPORTED TO ANOTHER HOSPITAL."

28.     The "PHYSICIAN MEDICAL NECESSITY CERTIFICATION" signed by Dr. Prabhu for Plaintiff on October 2, 2011, and submitted by Mercy Flight to Excellus expressly stated that the form was "*for non-emergency scheduled and unscheduled medical transportation services*." (Dkt. No. 6, Attach. 5, at 15 [Ex. 5-14 to Plf.'s Am. Compl.] [emphasis in original].)

29.     On the Certification, Dr. Pradhu checked only the boxes indicating that an ambulance was needed because Plaintiff "require[d] isolation precautions" and "require[d] continuous IV therapy," and for an "OTHER" reason, namely, that she was afflicted with "Gram neg bacteria + SIRS + Anemia (hb 6-6) early small bowel obs [obstruction]." (Dkt. No. 6, Attach. 5, at 15 [Ex. 5-14 to Plf.'s Am. Compl.].)

30.     On the Certification, Dr. Prabhu wrote "return to Cleveland Clinic where pt had transplant" to support her request.

31.     Mercy Flight's claim was reviewed by Dr. Richard Lockwood, a licensed physician, who determined the air ambulance was not medically necessary because her line infection was treatable at Robert Packer.

32.     The contract that covered Plaintiff includes a Rider entitled "Prehospital

Emergency Services and Ambulance Transportation Benefit Rider" that states, in pertinent part,

as follows:

> **Ambulance Service.** We will provide coverage for air ambulance service
> provided by a Hospital, professional, or licensed ambulance service to
> evaluate and treat an emergency condition. We will cover air ambulance
> transportation to the nearest appropriate facility, when medically
> necessary in an emergency. The recommending doctor must substantiate
> such transportation in writing. . . .

(Dkt. No. 6, Attach. 4, at 17 [Ex. 4-16 to Plf.'s Am. Compl.].)

33.     The contract contains a definition of the term "medical necessity."

34.     On or before December 16, 1999, Excellus created a Corporate Medical Policy

that pertains to the use of air ambulances.

35.     On November 22, 2011, Excellus sent to Plaintiff a denial letter along with a two-

page enclosure entitled "Notice of Determination As Required By Law."[6]

36.     Dr. Prabhu and Plaintiff's husband sent letters to Excellus, which were construed

by Excellus as "a standard internal appeal."  (Dkt. No. 6, Attach. 5, at 10, 11 [Exs. 5-9 and 5-10

to Plf.'s Am. Compl.]; Dkt. No. 6, Attach. 4, at 20 [Ex. 4-19 to Plf.'s Am. Compl.].)

37.     Excellus assigned the appeal to Dr. Frank Dubeck, a licensed physician, who

upheld Dr. Lockwood's denial and added that the Cleveland Clinic was not the nearest

approximate facility because Plaintiff could have been treated in Syracuse, Rochester, or

Pittsburgh.

---

[6]     Although Plaintiff denies receiving the two-page enclosure, she does not support
that denial with a citation to admissible record evidence.  (Dkt. No. 25, Attach. 7, ¶ 35 [Plf.'s
Rule 7.1 Response].)

38.     On February 10, 2012, Excellus sent a letter to Plaintiff notifying her that the denial had been upheld, along with a one-page document entitled "Internal Adverse Benefit Determination," a one-page document entitled "Internal Adverse Benefit Determination – Information Sheet" and a six-page document entitled "New York State External Appeal Instructions & Application."

39.     After receiving Excellus' letter of February 10, 2012, Plaintiff filed an external appeal pursuant to NY State Insurance Law, Article 49. (Dkt. No. 21, Attach. 1, ¶ 2 [Houghtaling Decl.]; Dkt. No. 21, Attach. 1, at 2-8 [Ex. A to Houghtaling Decl.]; Dkt. No. 6, ¶ 58 [Plf.'s Am. Compl.].)

40.     On April 2, 2012, Excellus and Plaintiff were notified of the following: (a) Plaintiff's external appeal had been considered by a physician who was "board certified in Emergency Medicine," was "an Attending Physician in an Emergency Department at a medical center located in the northeast," and was "an Assistant Professor of Emergency Medicine"; (b) the physician had upheld the decision by Excellus to deny Plaintiff's claim; and (c) the physician was employed by a company (MCMC) which certified that the physician had "no material familial, professional, or financial conflict of interest with . . . [the] patient, health plan . . . , treating provider, [or] treating institution . . . ."  (Dkt. No. 21, Attach. 1, ¶ 5 [Houghtaling Decl.]; Dkt. No. 21, Attach. 8, at 56-62 [Ex. D to Houghtaling Decl.].)

41.     In determining Plaintiff's external appeal, the physician stated, among other things, as follows: (a) at the time of transfer, Plaintiff "had bacteremia but was clinically stable," "[h]er vital signs were normal," "[n]otes from the flight crew indicate that [she] was 'asymptomatic'"; (b) "there is no documentation that any . . . services were provided" to her by

the flight crew "[o]ther than monitoring her vital signs"; (c) "[t]here is not documentation of [Plaintiff's] clinical course after she arrived at the Cleveland Clinic"; (d) "there are no progress notes from Robert Packer Hospital detailing what care she required at the Cleveland Clinic that she could not get at Robert Packer Hospital"; (e) there were "not records that indicate evidence of a bowel obstruction and early sepsis"; (f) "[a]s long as her renal function remained normal and she developed no signs of sepsis, it is unclear why she needed to transfer to a transplant center"; (g) at the time, all she needed were "antibiotics" and "likely . . . her Hickman catheter removed"; (h) in any event, any transfer could have been done by land ambulance because Plaintiff was "described as being totally stable" and "did not appear to be at risk for rapid deterioration." (Dkt. No. 21, Attach. 8, at 56-62 [Ex. D to Houghtaling Decl.].)

42.     The contract that applied to Plaintiff's claim at issue in this action provided as follows, in pertinent part:

> **Interpretation of this contract.** We [meaning Blue Cross and Blue Shield of Central New York, which is an assumed name of Excellus] have the authority and discretion to interpret this contract and to construe any uncertain or disputed term or provision, including, but not limited to[,] determining whether an individual is eligible for benefits and, if so, the amount of the benefit available.

(Dkt. No. 6, Attach. 1, at 25 [Ex. 1-24 to Plf.'s Am. Compl.]; Dkt. No. 21, Attach. 4, ¶ 2 [Cassady Decl.].)

## II.     GOVERNING LEGAL STANDARDS

### A.     Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's

Rule 7.1 Statement; rather, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

Finally, when a non-movant fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden. *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at *1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL 2473509, at *2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

## B.  Standards Governing Plaintiff's Claims and Defendants' Defenses

Because the parties have (in their memoranda of law) demonstrated an accurate understanding of the legal standards governing Plaintiff's claims and Defendants' defenses, the Court will not recite those legal standards in their entirety in this Decision and Order, which is intended primarily for the review of the parties, but merely focus on certain portions of those standards where necessary below in Part III of this Decision and Order.

## III.    ANALYSIS

Generally, in support of her motion for partial summary judgment, Plaintiff asserts five arguments. (Dkt. No. 18, Attach. 6 [Plf.'s Memo. of Law].)  First, Plaintiff argues, Employer's policy with Defendants is a "plan, fund or program" under ERISA despite the absence of a plan document because, from the surrounding circumstances, a reasonable person could ascertain the intended benefits, a class of beneficiaries, the source of financing and procedures for receiving benefits. (*Id*.)  Second, Plaintiff argues, ERISA preemption (of all state laws that relate to employee benefit plans), which is broad, indicates that insurers may be proper parties for purposes of claims under § 502. (*Id*.)  Third, Plaintiff argues, more specifically, in a claim for benefits under § 502(a)(1)(B), an insurer may be treated as the Plan Administrator by virtue of its control over the distribution of plan funds and benefits decision-making, regardless of whether it was designated as a plan administrator in governing plan documents. (*Id*.)  Fourth, Plaintiff argues, in any event, employers are not proper party defendants in a claim for benefits under a § 502(a)(1)(B), which means that there would be no person or entity from which Plaintiff could seek relief if Defendants were not proper party defendants in this action. (*Id*.)  Fifth, Plaintiff argues, in the alternative, it is impossible for Defendants to deny that they are the proper parties to Plaintiff's claim for benefits under a § 502(a)(1)(B), because the group insurance policy in this action, which was drafted by Defendants, expressly identifies the proper parties to this action, specifically, the "Blue Cross and Blue Shield Plan" and "Excellus Health Plan, Inc., doing business as Blue Cross and Blue Shield of Central New York." (Dkt. No. 18, Attach. 6 [Plf.'s Memo. of Law].)

Generally, in response to Plaintiff's motion and in support of their cross-motion for summary judgment, Defendants assert four arguments. (Dkt. No. 21, Attach. 9 [Defs.' Opp'n Memo. of Law].) First, Defendants argue, neither Defendant is a proper party to Plaintiff's claim for benefits under ERISA for the following reasons: (a) under the terms of ERISA (specifically, 29 U.S.C. § 1002[16][A][i],[ii] and [B][i]), the plan administrator is the plan sponsor where no plan administrator is named (and, here, no plan administrator is named); (b) in any event, Patricia Hansen is the Plan Administrator under ERISA, because she decides, *inter alia*, what benefits are available, how to fund the Plan, and whether to delegate responsibility for claims decisions,

and because she expressly stated in Paragraphs 21 and 22 of her declaration that she is the Plan Administrator; (c) the weight of the case law in the Second Circuit does not permit ERISA claims to be asserted against an insurer/claims administrator who is not the plan, the plan administrator or the plan trustee (and Defendants are none of those things); (d) Plaintiff's reliance on the references to "Blue Cross and Shield Plan" in the contract is misplaced because the phrase "Blue Cross and/or Blue Shield Plan" is a short-hand reference to the numerous independent licensees of the Blue Cross and/or Blue Shield service marks; and (e) indeed, the "Blue Cross and Blue Shield Plan" is not even an existing entity. (*Id.*) Second, Defendants argue, even if one of the Defendants were a proper party, Plaintiff's claim for benefits under ERISA should still be dismissed because the decision to deny Plaintiff's claim under the group insurance contract was not arbitrary or capricious in that Plaintiff fails to show that a transfer was medically necessary, the Cleveland Clinic was the nearest facility that could have provided her with appropriate care and the use of an air ambulance to transport her to the Cleveland Clinic

was medically necessary. (*Id*.) Third, Defendants argue, moreover, Plaintiff's breach-of-fiduciary claim under ERISA should be dismissed, because it is duplicative of her claim for benefits under ERISA, and in any event the denial was not arbitrary and capricious (based on the administrative record, which does not include Plaintiff's submissions on her attempted third appeal). (*Id*.) Fourth, Defendants argue, Plaintiff's breach-of-claims-procedure claim under ERISA should be dismissed, because at no point does she attempt to relate any of her allegations of procedural violations to Section 503 or Regulation 2560.503-1, and in any event she was given a full and fair review process and more than ample notice of the bases for the determinations. (*Id*.)

Generally in reply to Defendants' response and in response to Defendants' cross-motion for summary judgment, Plaintiff asserts two arguments. (Dkt. No. 25, Attach. 8 [Plf.'s Reply Memo. of Law].) First, Plaintiff argues, Defendants are proper parties to her claim for benefits under ERISA for the following reasons: (a) a "Plan" has been established under ERISA; (b) Excellus falls within ERISA's definition of an "administrator"; (c) the contract proscribes legal action against Excellus; and (d) while Defendants attempt to deflect any legal status that would make them proper parties to an ERISA action, they have had no qualms about using their assumed and legal names to their advantage in other benefits cases. (*Id*.) Second, Plaintiff argues, her claim for benefits under ERISA § 502(a) is valid for the following reasons: (a) insufficient discovery has occurred for Defendants to develop an adequate administrative record (which consists of all medical records surrounding her stay at Robert Packer and the Cleveland Clinic); (b) in any event, the claim should be granted under the definition of "emergency medical condition" in the Patient Protection and Affordable Care Act ("PPACA"); (c) the claim should

be granted even under an arbitrary and capricious standard, because "Blue Cross charges premiums and, like any other insurer, retains more of its funds where it denies a claim," and Plaintiff needs further discovery "to determine whether Blue Cross has other financial incentives in denying claims, or if it has established the appropriate safeguards to act as an unconflicted fiduciary when it reviews claims"; and (d) the medical evidence submitted in this case strongly supports granting Plaintiff's claim for benefits, because even a "cursory review" of her medical records shows that there was "ample reason" to transfer her by air ambulance to the Cleveland Clinic, and the fact that her care at the Cleveland Clinic was overseen by a nephrologist shows that she received specialized medical care there. (*Id*.)

Generally, in reply to Plaintiff's response, Defendants assert three arguments. (Dkt. No. 26 [Defs.' Reply Memo. of Law].) First, Defendants argue, Plaintiff does not dispute Defendants argument that her breach-of-fiduciary-duty claim and breach-of-claims-procedure claims should be dismissed, thus consenting to the dismissal of those claims under Local Rule 7.1(b)(3) the District's Local Rules of Practice. (*Id*.) Second, Defendants argue, with regard to Plaintiff's remaining claim for benefits, Plaintiff's argument that one or both of the Defendants are proper parties to that claim depends on the premise that the Excellus contract constitutes an ERISA "Plan," which is false; rather, the Excellus contract is merely the mechanism that Patricia Hansen chose to provide coverage to her employees under the unnamed "Plan" that she established (without using a "wrap" document or some other written document to comply with ERISA's written instrument requirement). (*Id*.) Third, Defendants argue, even if Plaintiff named a proper party, her claim for benefits should still be dismissed for the following reasons: (a) there is no genuine dispute as to what documents constitute the administrative record, because

Defendants concede that the Cleveland Clinic records are not part of the administrative record (and cited those records in their initial memorandum of law only because Plaintiff had already placed them before the Court in her Complaint); (b) Plaintiff has failed to show the "good cause" necessary to seek discovery beyond the administrative record (especially in light of the fact that Plaintiff has already sought discovery into the compensation arrangements of doctors Lockwood and Dubeck, and Defendants provided detailed responses); (c) Plaintiff's argument that the arbitrary and capricious standard of review is not satisfied because of certain alleged deficiencies in the "claims process" is belied by the actual letters and their enclosures sent to Plaintiff (and, at most, there occurred a de minimis violation that did not prejudice Plaintiff); and (d) the PPACA regulation concerning emergency care that Plaintiff relies on is irrelevant to her claim, because the regulation is limited to circumstances in which insurers deny claims because of a failure to obtain prior authorization or because the provider was out of network (neither of which circumstance is present here). (*Id.*)

After carefully considering the matter, the Court denies Plaintiff's motion, and grants Defendants' cross-motion, for each of the many reasons stated in Defendants' memoranda of law. (Dkt. No. 21, Attach. 9 [Defs.' Opp'n Memo. of Law]; Dkt. No. 26 [Defs.' Reply Memo. of Law].) To those reasons, the Court adds six points.

First, the Court finds that Plaintiff's failure to oppose Defendants' legal arguments with regard to her second and third claims was, with all due respect to Plaintiff's attorney, *willful* for purposes of Fed. R. Civ. P. 83(a)(2). The Court makes this finding because, when she applied for admission to practice in this Court, Plaintiff's attorney certified that she read and understood the Court's Local Rules of Practice, one of which was Local Rule 7.1(b)(3). Indeed, from the

District's CM/ECF System, it appears that Plaintiff's attorney is an experienced practitioner in this District, having litigating seven other actions in this Court. Simply stated, the inference is inescapable that Plaintiff's failure to address the merits of Defendants' legal arguments with regard to her second and third claims was due to the lack of a good-faith basis to reject those legal arguments. As a result, the Court finds that Defendants' burden with regard to these legal arguments has been lightened, and that they have (at the very least) met that lightened burden. *See, supra,* Part II.A. of this Decision and Order.

Second, to the extent that Plaintiff's failure to address the merits of Defendants legal arguments with regard to her second and third claims was based on a purported need for further discovery, Plaintiff has not met the standard for further discovery. Rule 56(d) of the Federal Rules of Civil Procedure provides as follows:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). This rule has been appropriately characterized as providing as "a narrow exception to the availability of summary judgment in instances where a party cannot fairly respond to a summary judgment motion because of the inability, through no fault of that party, to acquire evidence which is available and would preclude the entry of summary judgment." *Steptoe v. City of Syracuse*, 09-CV-1132, 2010 WL 5174998, at *4 (N.D.N.Y. Oct 5, 2010) (Peebles, M.J.), *adopted by* 2010 WL 5185809 (N.D.N.Y. Dec. 15, 2010) (Mordue, C.J.).[7] To obtain relief under Fed. R. Civ. P. 56(d), a litigant must submit an affidavit showing "(1) what

---

[7]        *Accord, Gill v. Calescibetta*, 00-CV-1553, 2009 WL 890661, at *7 (N.D.N.Y. March 31, 2009) (Report-Recommendation by Peebles, M.J., adopted by Sudday, J.); *Gill v. Hoadley*, 261 F. Supp.2d 113, 132 (N.D.N.Y. 2003) (Peebles, M.J.), *adopted by* Memorandum-Decision and Order (N.D.N.Y. filed Jan. 9, 2004) (Scullin, C.J.).

facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort the affiant has made to obtain them, and (4) why the affiant has been unsuccessful in those efforts." *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 303 (2d Cir. 2003).[8] Here, Plaintiff has done none of these things. (*See generally* Dkt. Nos. 18, 25.)

Third, with regard to Plaintiff's first claim, while the Court is not persuaded by Part "(c)" of Defendants' first argument (i.e., that the Second Circuit does not permit ERISA claims to be asserted against an insurer/claims administrator who is not the plan, the plan administrator or the plan trustee), the Court is persuaded that the Second Circuit permits ERISA § 502(a)(1)(B) claims to be asserted against an insurer/claims administrator only where that insurer/claims administrator has "sole and absolute discretion" to deny benefits and makes "final and binding" decisions as to appeals from those denials. *New York State Psychiatric Ass'n, Inc. v. UnitedHealth Group*, No. 14-20-cv, 2015 WL 4940352, at *4-5 (2d Cir. Aug. 20, 2015). Here, pursuant to the group contract in question, which was voluntarily chosen and signed by Ms. Hansen, Excellus was bound by the determination of an External Appeal Agent. As a result, even if Excellus can be rationally said to have had "sole and absolute discretion" to deny Plaintiff benefits, Excellus cannot be rationally said to have made a "final and binding" decision as to Plaintiff's appeal from such a denial.

---

[8]    *Accord, Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999); *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995); *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994); *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 422 (2d Cir. 1989); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985); *Capital Imaging Assoc., P.C. v. Mohawk Valley Med. Assoc., Inc.*, 725 F. Supp. 669, 680 (N.D.N.Y. 1989) (McCurn, C.J.), *aff'd*, 996 F.2d 537 (2d Cir. 1993).

Fourth, also with regard to Plaintiff's first claim, her argument that she must be permitted to sue Defendants in this action because she cannot sue anyone else is unpersuasive. Patricia Hansen has flatly admitted that she is not only the Plan Sponsor but the Plan Administrator. (Dkt. No. 18, Attach. 3, ¶¶ 20-21 [Hansen Decl., stating that "it is my practice as the Plan Administrator" and "[a]s the . . . Plan Administrator under the law . . . ."].) In addition, it is undisputed that Ms. Hansen was the decider of whether to have a Plan, how to fund it, what level of coverage to offer her employees,[9] and how much will be paid by them, if any. *See, supra,* Part I.C. of this Decision and Order. As a result, under the circumstances of this case, it appears that Plaintiff can sue Ms. Hansen.

Fifth, also unpersuasive is Plaintiff's alternative argument that it is impossible for Defendants to deny that they are the proper parties to Plaintiff's first claim, because the group insurance policy in question identifies the ERISA plan as the "Blue Cross and Blue Shield Plan" and/or "Excellus Health Plan, Inc." This argument assumes a fact not established, namely, that the term "plan" in the policy expressly refers to an *ERISA welfare benefits plan* rather than simply a Blue Cross and Blue Shield Association licensee that offers participants access to a network of providers (regardless of whether the participants are employers and covered by ERISA). Indeed, it appears to the Court that, even if the term "plan" in the policy referred to the particular group insurance plan selected by Patricia Hansen, the term would not expressly refer to an ERISA welfare benefits plan (again because the other groups to which the plan was offered

---

[9] It bears repeating that Ms. Hansen voluntarily chose and signed a group insurance contract pursuant to which the insurer was bound by a determination of an External Appeal Agent. *See, supra,* Part I.B. of this Decision and Order.

may not be employers or covered by ERISA).[10]  Whether Defendants may have taken what is perceived to be an inconsistent position in one or more other actions under different circumstances would be interesting (especially if the counsel in the actions was the same) but it would not judicially estop them from taking the position they do in this action, under the circumstances.

Sixth, and perhaps most importantly, even if the Court were to reach a conclusion contrary to the conclusions reached in the preceding three paragraphs, the Court would dismiss Plaintiff's first claim.  This is because, at the very least, based on the current evidence (including the statement of undisputed material facts set forth above in Parts I.B. and I.C. of this Decision and Order), the Court finds that Defendants' denial of Plaintiff's claim would survive an arbitrary-and-capricious standard of review.  The reasons relied on by Plaintiff in support of a contrary finding (i.e., the purported "ample reason" to transfer her by air ambulance based on a "cursory review" of the medical records, and the fact that a nephrologist oversaw her care at the Cleveland Clinic) ignore the following: (a) the fact that, even assuming that she needed a transfer to a transplant center, both University Hospital in Syracuse, New York, and the University of Rochester Medical Center both had kidney transplant facilities that were closer to Robert Packer Hospital by road than was the Cleveland Clinic by road; and (b) the fact that the medical evidence does not establish a need to transport her *by air* to a kidney transplant center in Cleveland in 1 hour 45 minutes[11] instead of transporting her *by ground* to the same center in 4

---

10      The Court notes that Defendants have adduced admissible record evidence, unrebutted by Plaintiff, that "Excellus does not form employee welfare benefit plans, except for its own employees."  (Dkt. No. 21, Attach. 4, ¶ 7 [Cassady Decl.].)

11      (Dkt. No. 6, Attach. 5, at 5, 8, 9 [indicating that Plaintiff took off at 3:25 p.m. and Plaintiff reached Cleveland Clinic at 5:10 p.m.].)  For the sake of brevity, the Court will set aside

hours 58 minutes,[12] or to a kidney transplant center in Rochester in 2 hours 7 minutes,[13] or to a

kidney transplant center in Syracuse in 1 hour *43* minutes (i.e., a center that was actually two

minutes closer than was the center in Cleveland).[14]  Finally, the Court finds that Plaintiff's

conflict-of-interest analysis suffers from the following defects: (a) it would appear to render

every claim denied by an insurer acting as a claims administrator arbitrary and capricious (which

would appear to be particularly unjust to insurers who have been rendered involuntary Plan

Administrators); (b) in any event, it is undermined by the record evidence establishing that

Plaintiff's external appeal was decided by a physician employed by a third-party which certified

that the physician was laboring under no conflict of interest (*see* Paragraph 40 of Part I.C. of this

Decision and Order); and (c) moreover, it depends for success on further discovery without

fulfilling the requirements for that discovery under *Miller v. Wolpoff & Abramson, L.L.P.,* 321

F.3d 292, 303 (2d Cir. 2003).

For all of these reasons (including the reasons stated in Defendants' memoranda of law),

the Court denies Plaintiff's motion, and grants Defendants' cross-motion.

---

the record evidence suggesting that it took a period of time for Plaintiff to travel by land
ambulance from Robert Packer Hospital to the Mercy Flight fixed wing aircraft, which would
have lengthened the total amount of time it took for her to travel from Robert Packer Hospital to
the Cleveland Clinic (further making a trip to Syracuse by road comparably shorter).

[12]     (Dkt. No. 21, Attach. 3, at 58 [indicating that travel by ground from Robert
Packer Hospital to Cleveland Clinic takes 4 hours 58 minutes].)

[13]     (Dkt. No. 21, Attach. 3, at 60 [indicating that travel by ground from Robert
Packer Hospital to Strong Memorial Hospital in Rochester, New York, takes 2 hours 7 minutes].)

[14]     (Dkt. No. 21, Attach. 3, at 62 [indicating that travel by ground from Robert
Packer Hospital to University Hospital in Syracuse, New York, takes 1 hours 43 minutes].)

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for partial summary judgment (Dkt. No. 18) is

**DENIED**; and it is further

**ORDERED** that Defendants' cross-motion for summary judgment (Dkt. No. 21) is

**GRANTED**.

Dated: September 11, 2015
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge